**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OXFAM AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Defendant. | Civil Action No. 14-cv-13648-DJC |

**OXFAM AMERICA'S MEMORANDUM IN REPLY TO DEFENDANT'S SUMMARY JUDGMENT OPPOSITION AND OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Congress required the Securities and Exchange Commission to issue a Final Rule under Section 1504 of the Dodd-Frank Wall Street Reform and Consumer Protection Act by April 17, 2011. Yet nearly four years later the SEC has not done so. Because section 706(1) of the Administrative Procedure Act ("APA") provides a mechanism for enforcing Congress's commands,[1] Oxfam has moved for summary judgment under Section 706(1) for an injunction to enforce the command imposed by Section 1504. *See* Docket No. 17. In response, the SEC argues in its cross-motion and opposition ("Opposition," Docket No. 24) that the remedy sought is "extraordinary," its administrative burden heavy, and its failed first effort to issue a Final Rule somehow exempts it from the Section 1504 deadline. None of these arguments need detain the

---

[1] *See Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 701-702 (S.D. Ill. 2004) ("Congress enacted the judicial enforcement provisions of the APA in part to provide a mandatory mechanism to enforce its own statutory commands.").

Court from the simple task before it: to enforce the will of Congress with the injunctive relief mandated by the APA.

The Opposition boils down to the following proposition: an agency's vacated effort to comply with a Congressional deadline frees it from that deadline in favor of its own agenda priorities. *See* Opposition at 13-14. But the SEC provides no authority for its *ipse dixit* assertion. Nor does it address the authority against it. *See* Oxfam Summary Judgment Brief ("Oxfam Brief," Docket No. 18) at 7. Simply put, Congress enjoys the prerogative to set policy priorities. The SEC does not enjoy the discretion to reorder them. When Congress requires a rulemaking by a stated deadline, the failure to meet that deadline constitutes agency action "unlawfully withheld" under Section 706(1) of the APA. Awarding injunctive relief under Section 706(1) simply restores the supremacy of the legislative branch of government over subordinate administrative agencies.

Contrary to the SEC's arguments, the First Circuit has not freed its courts to bear idle witness to an agency's violation of Congressional deadlines. Oxfam has found no case in which the First Circuit has deferred to an agency in violation of a statutory rulemaking deadline. The case on which the SEC principally relies -- the unpublished decision in *In re Sierra Club*, No. 12-1860, 2013 WL 1955877 (1st Cir. May 8, 2013) -- involved the EPA's delay in granting discharge permits not subject to any statutory deadline. The decision's passing reference to the D.C. Circuit's decision in *In re Barr Laboratories, Inc.* does not import that precedent wholesale into the First Circuit. The First Circuit cited *In re Barr* in support of the proposition that "[p]etitioners have not shown why these two particular permits should be moved ahead of the queue by our court." *Id.* at *1. Not only does this case not involve the zero sum reordering of a permit queue -- Congress had not, and rarely does, sort out this level of priority -- more

importantly it did not embrace the *In re Barr* proposition the SEC ultimately invites this Court to embrace: that an agency's violation of a statutory mandate does not "necessarily" warrant equitable relief. *See In re Barr*, 930 F.2d 72, 74 (D.C. Cir. 1991).

Finally, the SEC overstates the task before it. If nothing else, the SEC's enduring violation of the Section 1504 rulemaking deadline and its prior attempted promulgation of a Final Rule has left it with an ample rulemaking record at its disposal. The SEC is not being asked to promulgate a rule from scratch. Indeed, the issues raised by the rulemaking are not particularly complex.[2] Yet the SEC offers only that it "expects" to "consider" a revised "proposed" rule by October 31, 2015, more than 4.5 years after the deadline set by Congress, and after having previously been in violation of that deadline. That the SEC can only offer this empty gesture demonstrates the need for an injunction to enforce Congress's command and to compel the SEC to finish its nearly-completed job.

## ARGUMENT

### A.     The *TRAC* Factors Do Not Free the SEC from the Rulemaking Deadline

The SEC devotes much of its Opposition to seeking relief under the *TRAC* factors. *See* Opposition 9-17.[3] The First Circuit, however, has never applied the *TRAC* factors to pardon violations of statutory rulemaking deadlines. Nor, in any event, do the *TRAC* factors weigh in the SEC's favor.

### 1.     This Circuit has never applied *TRAC* to a Congressional rulemaking deadline.

The SEC's undisputed -- and repeated -- violation of the statutory deadline in Section 1504 constitutes agency action "unlawfully withheld." *See* Oxfam Brief at 8-10. *TRAC* did not

---

[2]     Following legislative and regulatory action in the European Union, Norway, and Canada, the U.S. has the distinction of being the slowest major market for extractive companies to enact a transparency rule.

[3]     *See Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

arise in the "unlawfully withheld" context. It arose in "the context of a claim of unreasonable delay" and the *TRAC* court identified the "hexagonal contours of a standard" for determining "whether the agency's delay is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 80. Although a flexible standard makes sense as a useful if imperfect measure of how much delay is too much, it hardly seems necessary to detect discrete violations of statutory deadlines. For this reason, only the D.C. Circuit, to Oxfam's knowledge, has unmoored the *TRAC* factors from their logical home and extended them to a case of action unlawfully withheld -- an inquiry not nearly as nuanced. *See In re Barr*, 930 F.2d 72.

The SEC's arguments for nonetheless doing the *TRAC* calculus when simple math would suffice are unavailing.

<u>First</u>, the SEC argues there is no "unlawfully withheld" agency action because "the SEC has already promulgated a rule under Section 1504," which was vacated. *See* Opposition at 16. This argument ignores that vacatur of a rule returns matters to where they stood "before the … [vacated] rule took effect." *Independent U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987). The SEC implies that it should receive a free pass for a valiant failure. But it cites no authority for why this should be so. Rather, the SEC's "duty to act is still (or again) unfulfilled." *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005).

The SEC also errs in suggesting that the cases on which Oxfam relies -- which all find a vacated, prior effort to promulgate a regulation *irrelevant* to an agency's obligations under a statutory deadline, *see* Oxfam Brief at 8 -- involved consideration of the *TRAC* factors.

Opposition at 17. But in fact, Oxfam's cases indicate that, in light of the statutory scheme, relief is appropriate irrespective of those factors.[4]

Second, the SEC incorrectly implies that the First Circuit applied the *TRAC* factors to a statutory deadline under the Clean Water Act in *In re Sierra Club*. *See* Opposition at 16. That case involved no deadline. While the Clean Water Act provides that initial permits should be issued for no more than five years,[5] the statute contains no deadline for permit renewals, and the agency's scheme, whereby prior permits remain in effect until renewed (even if years later) was judicially approved long ago. *See NRDC v. EPA*, 859 F.2d 156, 213-14 (D.C. Cir. 1988); *see also Costle v. Pacific Legal Found.*, 445 U.S. 198, 220 n.14 (1980) (explaining that any EPA delay in renewing these permits is subject to the "judicial review of *prolonged* agency inaction," not of agency action subject to a statutory deadline).[6]

The SEC also overstates the significance of *In re Sierra Club's* citation to *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991), where the D.C. Circuit applied the *TRAC* factors to a statutory deadline. *See* Opposition at 16. As the parenthetical to the citation makes plain, the First Circuit simply adopted the *In re Barr* rationale that relief may not be appropriate when it would "'simply move all others [with pending permit applications] back one space and produce no net gain.'" *In re Sierra Club*, 2013 WL at *1 (quoting *In re Barr*, 930 F.2d at 75). The Court did not adopt the more far-reaching conclusion that the *TRAC* factors apply to statutory deadlines, a violation of

---

[4] As the SEC acknowledges, Opposition at 17 n.11, the Court *specifically ordered* relief in *Sierra Club v. Johnson*, 374 F. Supp. 2d 30 (D.D.C. 2005), recognizing EPA's "record of nonperformance." *Id*. at 33. Similarly, here, there are multiple indications the *SEC* will not act on its own: (1) the lengthy delay in issuing the original Final Rule (after Oxfam moved for summary judgment); (2) the long delay to date in re-issuing the Final Rule; and (3) the agency's refusal to tell the Court when it will act, relying instead on a multi-hedged assertion that it "has *stated* that it *expects* to *consider* a revised *proposed* rule" by October 2015. Opposition at 5 (emphasis added).

[5] *See* 33 U.S.C. § 1342(b)(1)(B); *see also id.* § 1342(a)(3) (applying the state permitting scheme to EPA).

[6] There was similarly no statutory deadline at issue in *Towns of Wellesley, Concord & Norwood Mass. v. FERC*, 829 F.2d 275 (1st Cir. 1987), the other First Circuit decision on which the SEC relies. *See* Opposition at 16. That decision involved a challenge under the All Writs Act to FERC's "unreasonable delay" in issuing a rate-setting order to cure FERC's breach of a settlement agreement and prior court order.

which the case did not present, and a proposition rejected by other courts. *See Forest Guardians*, 174 F.3d at 1187 ("[W]hen an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act."); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *In re Paralyzed Veterans of Am.*, 392 F. App'x 858, 860 (Fed. Cir. 2010). Indeed, while the First Circuit has not had occasion to compel agency action "unlawfully withheld" in the context of a statutory deadline, a court in this district has acknowledged that the violation of a "fixed deadline" in a statute would present an obvious example of "unlawfully withheld" action under Section 706(1) of the APA. *See Tang v. Chertoff*, 493 F. Supp. 2d. 120, 155 (D. Mass. 2008).

There is no basis and no need to apply the *TRAC* factors here.

2. <u>Even were the Court to apply the *TRAC* factors, they demonstrate that the SEC's approach to Congress's clear deadline is unreasonable.</u>

a. *The length of the delay weighs in Oxfam's favor.*

The SEC's argument that the delay at issue is limited to the months since the July 2013 remand, Opposition at 9, 14, misses the point that the vacatur order restored the status quo "before the . . . [vacated] rule took effect." *Dole*, 809 F.2d at 855. The SEC cites no cases that suggest otherwise.

As the SEC candidly acknowledges, multiple courts have deemed delays comparable to those at issue here -- *i.e.*, more than four years -- to be unreasonable. *See* Opposition at 9. Indeed, while the SEC cites *In re Core Comm., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) for the proposition that there is no "'per se rule as to how long is too long,'" Opposition at 9, that case acknowledges that the D.C. Circuit has found delays of four years, three years, and even *nine months* to be unreasonable. *In re Core Comm., Inc.* 531 F.3d at 857 and n.8 (collecting cases).

Moreover, while the SEC seeks to distinguish *Tang v. Chertoff*, 493 F. Supp. 2d 148 (D. Mass. 2007), where a four-year delay was deemed unreasonable, on the grounds that the issues there were less complex, Opposition at 10-11, the SEC ignores the fact that here it already engaged in an *extensive* rulemaking process to enact the initial Section 1504 regulation. *See* SEC's Statement of Undisputed Facts (Docket No. 25) at ¶¶ 3-5, 8-9. Indeed, in this case the D.C District Court's remand was exceedingly narrow, simply finding the SEC erred in concluding that Congress had left it no discretion on certain regulatory choices, and remanding for the agency to exercise that discretion. *See American Petroleum Inst. v. SEC*, 953 F. Supp. 2d 5 (D.D.C. 2013). Such a narrow remand should take an agency months to address, not years.

      b. *Higher priorities do not justify the SEC's delay.*

The SEC contends that it has a busy docket. This contention does not excuse its continuing violation of a deadline imposed by Congress.

First, the SEC offers no admissible evidence to establish the magnitude of the burden it invokes to de-prioritize the Section 1504 rulemaking.[7] Instead, it cites to pages on its own website that (a) do not readily establish the number of enforcement actions, adjudications, and rulemakings it purports to have committed itself to since the original rule was vacated; and (b) contain inadmissible hearsay. Oxfam does not dispute that the SEC, like many other federal agencies, is busy. But the SEC has not established that it is a uniquely beleaguered agency for whom exigent circumstances justify a violation of a Congressional mandate or endorse the SEC's own preferential ranking of Congressional priorities.

---

[7] For example, Paragraphs 19 and 20 of the SEC's Statement of Undisputed Facts (Docket No. 25) purport to quantify the SEC's administrative burden in the number of enforcement proceedings, formal adjudications, and rule releases it has recently placed on its agenda and in the number of rulemakings for the upcoming calendar year. These assertions rely solely on links to its website. Although Oxfam does not view these factual assertions as material -- the SEC cites no First Circuit authority for the proposition that administrative burden trumps a rulemaking deadline -- Oxfam does not accept them as established.

As a matter of administrative law, moreover, no magnitude of agency burden lifts agency preference over Congress's demands. Oxfam has detailed the many rulemakings the SEC has either completed, or is in the process of completing, for which Congress has set no deadline. *See* Oxfam Brief at 11-12 and Ex. 8. The SEC claims that it is working "on over 50 rules at various stages in the rulemaking process," only "some of which also have statutory deadlines." *See* Opposition at 13. It also claims to be working on rules "without deadlines mandated by Congress," but, in its own view, are nonetheless "critical to the SEC's oversight of the financial markets." *Id.* The SEC, of course, enjoys some latitude in prioritizing discretionary agency initiatives. But it is not free to subordinate a rule that Congress ordered it to promulgate years ago to initiatives that have no temporal mandate at all.

The SEC's choice to proceed with a number of actions to which Congress has not assigned a deadline distinguishes the cases on which the SEC relies, where courts have declined to reorder agency priorities of *equal weight*. *See* Opposition at 12. Thus, even assuming court intervention were not appropriate where it would "simply move" other equally important projects "back one space," *id*., here *Congress* has determined the SEC's priorities, and the role assigned to agencies within our federal structure does not permit the SEC to re-order them. This would contravene Congress's priorities and its underlying effort to *expedite* the Section 1504 rulemaking, which, unlike the other activities in which the agency is engaged, Congress expressly noted will support "international transparency promotion efforts," 15 U.S.C. 78m(q)(2)(E), in light of its impact on those efforts elsewhere. *See* Oxfam Brief at 3, 12-13.[8]

---

[8] The Court should similarly reject the SEC's effort to reset Congress's priorities here by claiming the regulation is not "urgent" because it differs from other agency initiatives. *See* Opposition at 15. Congress's intent to use Section 1504 to support the government's international transparency promotion initiatives, 15 U.S.C. 78m(q)(2)(E), weighs in favor of prioritizing the rule now. Only by acting promptly will the U.S. avoid undermining global transparently initiatives elsewhere, including the Extractive Industries Transparency Initiative, which has mandated project-level disclosure but cannot achieve implementation until the SEC enacts a final rule. *See* Oxfam Brief at 3.

Accordingly, the relief requested by Oxfam does not implicate a zero-sum contest of equally-weighted priorities. A queue of similarly situated applicants does not stand before the SEC. *Cf. In re Sierra Club*, 2013 WL 1955877. A Congressionally-ranked list of rulemakings does, and the SEC has no discretionary authority to rearrange that list. But even if this case did present a "competing priorities" situation, the First Circuit has rejected the notion that competing priorities excuse delay, finding that while relief in one case could "impact on the allocation of scarce resources" and ultimately could "adversely affect" other parties, the Court may not "permit the legal rights of litigants to turn upon the alleged inability of the defendant fully to meet its obligations to others." *Caswell v. Califano*, 583 F.2d 9, 16-17 (1st Cir. 1978).

The SEC's first priority is to meet the obligations put to it by Congress. This *TRAC* factor further supports Oxfam's position.

### B. The APA Does Not Afford Equitable Discretion to Deny a Remedy for the SEC'S Violation of the Law

1. <u>The APA requires the Court to provide a remedy to ensure the SEC's compliance with its statutory mandate</u>.

The SEC suggests that even if it has failed to comply with Congress's statutory deadline, the Court should exercise equitable discretion under the APA to deny Oxfam's request for relief. *See* Opposition at 17, n.10. But as other appellate courts have found, courts do not have discretion to do nothing when they find that agency action has been unlawfully withheld. *See Forest Guardians v. Babbit*, 174 F.3d 1178, 1181, 1189 (10th Cir. 1999) ("Because the Secretary failed to comply with a mandatory, non-discretionary duty unambiguously imposed by the ESA, and because the Administrative Procedure Act requires courts to compel agency action unlawfully withheld, we reverse the district court."); *In re Paralyzed Veterans of Am.*, 392 F. App'x at 860 ("Congress clearly imposed on the Secretary a date-certain deadline to issue a final

regulation. Under such circumstances, the agency has no discretion in deciding to withhold or delay the regulation, and failure to comply is unlawful.").

Rather, the equitable discretion courts retain is the discretion to fashion an appropriate remedy that will secure prompt compliance with the statute. *See Ctr for Biological Diversity v. Pirie,* 201 F. Supp. 2d 113, 119 (D.D.C. 2002) (where there is a statutory violation, "the court can *not* exercise its discretion to provide no relief") (emphasis original) (vacated on mootness grounds). The Court, in exercising its discretion, "may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages" of employing an injunction over other possible means of enforcement. *Id*. *See also U.S. v. Oakland Cannabis Buyers' Cooperative*, 523 U.S. 483, 498 (2001) ("the court is limited to evaluating how . . . [the public interest and the conveniences of the parties] are affected by the selection of an injunction over other enforcement mechanisms").[9]

In *Center for Biological Diversity,* the court granted plaintiffs' requested injunction. 201 F. Supp. 2d at 120-122. It held: "Regardless of the equities at issue … the scope of the Court's discretion is limited to issuing relief considered necessary to secure prompt compliance with the" statute at issue. *Id.* at 122 (internal quotations and citations omitted). Here, too, in the face of the SEC's prolonged violation of the Section 1504 rulemaking deadline and its current equivocation about when it plans in earnest to cure that violation, the relief requested by Oxfam is necessary to ensure compliance with Section 1504.

---

[9] The SEC describes the relief Oxfam seeks as an "extraordinary remedy," Opposition at 7-8, but it fails to acknowledge that its prolonged violation of a statutory rulemaking deadline while equivocating about its intent to complete the rulemaking presents a commensurate extraordinary circumstance. A finding of unreasonable delay or unlawfully withheld agency action "presents such a[n extraordinary] circumstance . . . and [courts] will interfere with the normal progression of agency proceedings to correct transparent violations of a clear duty to act." *In re American Rivers and Idaho Rivers United*, 372 F.3d 413, 418 (D.D.C. 2004) (internal quotations omitted).

The SEC has demonstrated no reason to trust that it will act promptly on its own to comply with its Section 1504 obligations. The SEC effectively admits as much in its Opposition when it references the other rulemakings on its plate, Opposition at 10, 13, and carefully avoids making any commitment on when it might conclude the Section 1504 rulemaking. *Id*. at 2, 3, 5, and 20. That the SEC will not commit itself to a schedule for even the *proposed* rulemaking demonstrates that an injunction is necessary to ensure prompt compliance with Section 1504.

> 2. <u>Oxfam is entitled to injunctive relief because it is reasonable and necessary to ensure compliance with Section 1504.</u>

The injunction Oxfam seeks is no less reasonable than the relief afforded by established precedent and no less necessary to prompt the SEC to do what Congress has ordered it to do. The SEC offers only the illusory commitment that it "*expects* to *consider* a revised *proposed* rule by October 2015." Opposition at 2. This carefully chiseled-out commitment does more to raise than quell concerns that the SEC has no serious plan to pull itself out of its current violation. A similar pattern of protracted delay and lukewarm assurances resulted in a finding of unreasonable delay. *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 37 (D.D.C. 2000) ("the ambiguous, indefinite time frame for review of the plaintiff's petition constitutes unreasonable delay," and the "noncommittal estimate coupled with the specific history of interaction between these parties gives rise to a finding of 'unreasonable delay' . . . .").

Oxfam's injunction gives the SEC several months to put out a draft rule, a timeframe that is well within applicable precedent. Indeed, courts have given agencies less time to take final actions. *See, e.g., Abdi v. Chertoff*, 589 F. Supp. 2d 120, 121 (D. Mass. 2008) (60 days); *In re Paralyzed Veterans of Am.*, 392 Fed. App'x at 861 (giving Secretary 30 days to issue final rules after missing deadline by just over one month); *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 2d 1097, 1102, 1105 (E.D. Pa. 1996) (After 19-month delay, requiring immediate action with a

thirty-day progress report to the court); *In re American Rivers and Idaho Rivers United*, 372 F.3d 413, 420 (D.D.C. 2004) (mandating agency action in 45 days); *United Steelworkers of America v. Pendergrass*, 819 F.2d 1263 (3d Cir. 1987).

*Pendergrass* is particularly instructive. It involved a rule remanded to OSHA after an initial rulemaking that was besieged by long delays. *See* 819 F.2d at 1267.[10] Five months after the remand order, the Secretary of OSHA issued an advance notice of proposed rulemaking. But OSHA then failed to issue a rule, estimating only that a standard would issue at some point in 1988, more than two years after the remand order. *Id.* The Third Circuit was not satisfied. It ordered "that the Secretary shall, within sixty days of the date of our order, publish in the Federal Register a . . . standard . . . or a statement of reasons why . . . [a] standard is not feasible." *Id.* at 1270.[11]

In this case, the SEC has not even done what OSHA managed to do before the Third Circuit ordered it to get serious about the delayed rulemaking. The SEC has not issued an advanced notice of proposed rulemaking. In fact, it has taken no definitive step in the direction of resuming its Section 1504 rulemaking. The SEC does not attempt to persuade the Court otherwise. It simply appeals to a discretion it does not have to embark on other rulemakings -- some of which have longer statutory deadlines; some of which have no deadlines at all -- before returning to the Section 1504 rulemaking. The SEC purports to draw this discretion from its unsuccessful prior effort to promulgate an effective Final Rule. Congress has not endorsed this

---

[10] As in the instant case, in *Pendergrass* the agency did not have to start from scratch given the substantial administrative record and its previously developed analyses. *See also Raymond Proffitt Found.*, 930 F. Supp. 2d at 1101 (disagreeing that EPA needed two years when it had already done substantial work on the rule).

[11] The agency's first attempt at rulemaking took almost ten years, considerably longer than the original rulemaking in this case. Unlike in this case, however, that rulemaking was not subject to a Congressional deadline, so the time lapse was considered under the "unreasonably delayed" prong of APA § 706(1). *Pendergrass*, 819 F.2d at 1268.

free pass. Nor should this Court. The APA ensures that Congressional command is carried out, and the injunctive relief requested by Oxfam will do just that.

## **CONCLUSION**

This case is about enforcing a mandate of Congress. The SEC's opposition to the enforcement of that mandate takes two forms, both of which invite the Court to respect a discretionary authority it does not have: (1) the SEC, like many other agencies, is busy; and (2) the SEC has already tried, but failed, to meet that mandate. Neither agency convenience nor agency preference percolates upwards to nullify a statutory command.

Section 706(1) of the APA provides that "the reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." The SEC has twice found itself in violation of the statutory command to promulgate a Section 1504 Final Rule by April 2011. Its ongoing violation of that command, hitched to an illusory commitment to get around to the task perhaps by October 2015, presents an unequivocal and unrepentant case of agency action "unlawfully withheld" or, in the alternative, "unreasonably delayed." Congress has told the SEC to act. Injunctive relief is necessary to ensure that it will.

Accordingly, for the reasons set forth in this memorandum and in Oxfam's summary judgment brief (Docket No. 18), the Court should grant summary judgment in favor of Oxfam and enter an order requiring that the SEC: 1) issue a proposed rule within 30 days of the issuance of summary judgment or on August 1, 2015, whichever comes first; 2) open a 45-day period for public notice and comment; and 3) promulgate a final rule implementing Section 1504 within 45 days after the end of this period, within the final rule promulgated no later than November 1, 2015.

Date:  March 13, 2015

Respectfully submitted,

OXFAM AMERICA, INC.

By its attorneys,

/s/ Derek B. Domian
_____
Richard J. Rosensweig (BBO #639457)
rrosensweig@goulstonstorrs.com
Derek B. Domian (BBO #660568)
ddomian@goulstonstorrs.com
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
T: (617) 482-1776
F: (617) 574-4112

Jonathan Kaufmann (admitted *pro hac vice*)
Richard L. Herz (admitted *pro hac vice*)
Michelle Harrison (admitted *pro hac vice*)
EarthRights International
1623 K Street, NW
Washington D.C. 20006

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and email and paper copies will be sent to those indicated as non-registered participants on the above date.

                                                   /s/ Derek B. Domian