## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
**OXFAM AMERICA, INC.,**                )
                                        )
      **Plaintiff,**             )
                                        )
      **v.**                     )
                                        )    **Civil Action No. 14-13648-DJC**
**UNITED STATES SECURITIES AND**        )
**EXCHANGE COMMISSION,**                )
                                        )
      **Defendant.**             )
                                        )
_____)


## MEMORANDUM AND ORDER

**CASPER, J.**                                          **September 2, 2015**

### I.   Introduction

      Plaintiff Oxfam America, Inc. ("Oxfam") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), against Defendant United States Securities and Exchange Commission ("SEC"), to compel the SEC to promulgate a final extraction payments disclosure rule ("final disclosure rule") implementing Section 1504 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, 2220-22 ("Section 1504" and "Dodd-Frank").  D. 1.  The parties have filed cross motions for summary judgment.  D. 17; D. 23.  For the reasons stated below, the Court ALLOWS Oxfam's motion, D. 17, and DENIES the SEC's motion, D. 23.

### II.   Standard of Review

      The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (quoting Anderson, 477 U.S. at 249) (alteration in original).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III.    Factual Background

The facts are as represented in the parties' statements of material facts, D. 18 at 4-6; D. 25, to the extent they are not disputed.

Dodd-Frank became law on July 21, 2010.  D. 25 ¶ 1.  Section 1504 of Dodd-Frank amends the Securities Exchange Act of 1934 to require "publicly traded oil, gas, and mining companies," or "resource extraction issuers," to disclose payments made to foreign governments or the federal government for the commercial development of oil, natural gas or minerals.  D. 18 at 4.  Under Dodd-Frank, these disclosures must be made in annual reports to the SEC.  Id.

Section 1504 requires the SEC to issue a rule implementing the new disclosure requirements.  Id.

Specifically, Section 1504 provides that:

> Not later than 270 days after the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Commission shall issue final rules that require each resource extraction issuer to include in an annual report of the resource extraction issuer information relating to any payment made by the resource extraction issuer, a subsidiary of the resource extraction issuer, or an entity under the control of the resource extraction issuer to a foreign government or the Federal Government for the purpose of the commercial development of oil, natural gas, or minerals . . . .

Id. (quoting 15 U.S.C. § 78m(q)(2)(A)) (emphasis omitted).   As such, the SEC's statutory deadline for promulgating a final disclosure rule was April 17, 2011.  Id. at 5.

Between November 2010 and August 2012, the SEC posted projected dates on its website for promulgating the final rule; however, these dates were pushed back at least twice.  Id.  On December 15, 2010, the SEC proposed amendments to implement Section 1504, but between December 17, 2010 and August 21, 2012 the SEC received a substantial number of comments and, as a result, conducted numerous meetings with commentators regarding the proposed final disclosure rule, delaying promulgation.  D. 25 ¶ 3-5.

On May 11, 2012, Oxfam filed suit under the APA against the SEC alleging that the SEC had unlawfully withheld and unreasonably delayed promulgation of the final disclosure rule.  Id. ¶ 6.  On July 2, 2012, the SEC announced that it would issue a final rule on August 22, 2012 and, thereafter, promulgated Rule 13q-1, 17 C.F.R. § 240.13q-1, implementing the public disclosure requirement.  Id. ¶¶ 7, 8.  The final disclosure rule was published in the Federal Register on September 12, 2012 and the SEC and Oxfam subsequently stipulated to dismissal of the prior action.  Id. ¶¶ 9, 10.

On October 10, 2012, the American Petroleum Institute ("API") filed suit against the SEC in the District of Columbia requesting that the district court vacate the final disclosure rule.

Id. ¶ 11.  Oxfam intervened in the action to defend the rule.  Id. ¶ 12.  On July 2, 2013, the court vacated the final disclosure rule and remanded the matter to the SEC for further proceedings.  Id. ¶ 14 (citing API, et al. v. SEC, 953 F. Supp. 2d 5, 25 (D.D.C. 2013)).  The court concluded that the SEC had misread Dodd-Frank to require full public disclosure of the actual annual reports submitted to the SEC and that the SEC's denial of exemptions in situations where the payment disclosure was prohibited by the foreign government was arbitrary and capricious.  Id.; see API, 953 F. Supp. 2d at 11-23.  The court remanded to the SEC to reformulate the disclosure rule with an adequate justification for the agency's choices.  D. 18 at 5.  Given the court's conclusion, the court did not reach the other challenges to the rule, including that "the SEC failed to adequately consider the economic implications of the rule, and that Section 13(q) and the rule violated the[] First Amendment [] by compelling issuers to publicly disclose [] payment information."  D. 25 ¶ 15.

After remand, the SEC announced a projected proposed rule date of March 2015, however, that date has been pushed back and the SEC now plans "to consider a revised proposed rule" by October 2015.[1]  Id. ¶ 17.  Currently, the SEC had not announced a projected timeline for promulgating a new final disclosure rule.  D. 18 at 6.

---

[1] After the motion hearing, Oxfam moved for leave to file a request for judicial notice that "on May 21, 2015, the Spring 2015 Unified Regulatory Agenda ("Agenda") was published, which indicates the SEC has postponed the rulemaking, and projects it will not issue a new proposed rule until at least April 2016."  D. 36 at 1.  The SEC does not oppose Oxfam's request that the Court take judicial notice of the Agenda, but disputes Oxfam's characterization, arguing that the "Agenda reflects only that 'the Commission may be unable to take further action with respect to these mandated rulemakings until Spring 2016.'"  D. 37 at 1 (citation and emphasis omitted).  Under Fed. R. Evid. 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Moreover, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Therefore, the Court takes judicial notice of the Agenda itself and has reviewed

IV.     **Procedural History**

Oxfam instituted this action on September 18, 2014.  D. 1.  The parties subsequently filed cross motions for summary judgment, D. 17; D. 23.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 32.

V.     **Discussion**

A.     **SEC's Failure to Promulgate a Final Disclosure Rule Constitutes Agency Action "Unlawfully Withheld"**

As a threshold matter, the parties dispute whether the SEC's delay in promulgating the final extraction payments disclosure rule can be considered "unlawfully withheld" under the APA since the SEC had promulgated a rule that was later vacated.  D. 27 at 4; see 5 U.S.C. § 706 (1) (noting that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed").  As noted above, Congress specified that the SEC had no more than 270 days after the date of enactment of Dodd-Frank to issue a final extraction payment disclosure rule.  15 U.S.C. § 78m(q)(2)(A).  Under Section 1504, then, the SEC's statutory deadline for promulgating a final disclosure rule was April 17, 2011.  D. 18 at 5.  Nearly seventeen months after this deadline, on September 12, 2012, the SEC did adopt a final rule implementing Section 1504.  Id. at 5.  This rule was vacated, however, and the SEC is now more than four years past the deadline set by Congress for the promulgation of the final disclosure rule.  Id. at 5-6.

The SEC argues that because it "has already promulgated a rule under Section 1504" that it "has not in fact 'unlawfully withheld' action here."  D. 24 at 16.   The Court agrees with Oxfam, however, that the district court's decision to vacate the final disclosure rule simply returned matters to where they stood before and that, in general, remand orders only serve to

the filing in connection with the parties' motions for summary judgment.   D. 17; D. 23. Accordingly, Oxfam's motion for leave to file a request for judicial notice, D. 36, is ALLOWED.

"restore the status quo ante . . . ."  D. 18 at 7 (citation and internal quotation marks omitted); <u>see</u> <u>Independent U.S. Tanker Owners Comm. v. Dole</u>, 809 F.2d 847, 854-55 (D.C. Cir. 1987) (noting that vacatur of an agency rule returns conditions to the status quo ante); <u>Sierra Club v. Johnson</u>, 374 F. Supp. 2d 30, 33 (D.D.C. 2005) (noting that after an order vacating agency action the agency's "duty to act is still (or again) unfulfilled" because the order merely "operated to restore the status quo ante"); <u>Envtl. Def. v. Leavitt</u>, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (noting that vacatur of agency promulgations "restored the status quo," which "presented a situation wherein [the agency] had failed to promulgate regulations in accordance with [an] express deadline . . . despite its nondiscretionary, statutory obligation to do so").  Were the rule otherwise, an agency could take inadequate action to promulgate a rule and forever relieve itself of the obligations mandated by Congress.  The Court concludes, therefore, that the SEC's delay in promulgating the final extraction payments disclosure rule can be considered "unlawfully withheld" as the duty to promulgate a final extraction payments disclosure rule remains unfulfilled more than four years past Congress's deadline.  <u>See, e.g.</u>, <u>Biodiversity Legal Found. v. Badgley</u>, 309 F.3d 1166, 1177 (9th Cir. 2002) (noting that agency's failure to comply with the twelve-month deadline [was] not in accordance with . . . the governing law" and distinguishing cases "where there was an unreasonable delay in the absence of a firm deadline"); <u>Forest Guardians v. Babbitt,</u> 174 F.3d 1178, 1187 (10th Cir. 1999) (noting that "when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action . . . "); <u>Tang v. Chertoff</u>, 493 F. Supp. 2d 148, 155 (D. Mass. 2007) (noting that "where agency delay violated a fixed deadline set out in a separate statute or regulation" that would constitute "agency action unlawfully withheld . . .").  Moreover, even if the Court considers the 270-day deadline to

have reset from the date of the remand order – July 2, 2013 – the SEC is now more than a year

past a renewed 270-day deadline with no assurances as to when a final rule may be promulgated.

**B.      Whether the APA Affords Equitable Discretion to Apply TRAC Factors to Agency Action Unlawfully Withheld Under the APA**

Having reached the aforementioned conclusion regarding the SEC's inaction, the Court

must determine the proper remedy under the APA.  The SEC argues that the Court should use its

equitable discretion to deny the "extraordinary relief" sought by Oxfam and urges the Court to

apply the multi-factor guidelines set out in Telecommunications Research & Action Center v.

FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") to evaluate whether agency action should be

ordered here.   D. 24 at 2; see also In re Barr Laboratories, 930 F.2d 72 (D.C. Cir. 1991)

(applying the TRAC factors).   Under TRAC, the Court must consider six factors to determine

whether injunctive relief is an appropriate remedy for agency inaction.   TRAC, 750 F.2d at 80.

Specifically, TRAC provides that to assess "claims of agency delay," the Court must consider:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

Id. (internal citations and quotation marks omitted).  Oxfam notes, however, that "TRAC did not

arise in the 'unlawfully withheld' context" and argues that although that "flexible standard

makes sense as a useful if imperfect measure of how much delay is too much," it is not necessary

to apply a flexible standard when there is a clear violation of a statutory deadline.  D. 27 at 3-4.

Oxfam further argues that the Court does not have "discretion to do nothing when [it] find[s] that

agency action has been unlawfully withheld." D. 27 at 9 (citing Forest Guardians, 174 F.3d at 1187, 1190 (concluding that "if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them 'within a reasonable time,' a court must compel only action that is delayed unreasonably" but "when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act") (internal citation omitted) and In re Paralyzed Veterans of Am., 392 F. App'x 858, 860 (Fed. Cir. 2010) (noting that "Congress clearly imposed . . . a date-certain deadline to issue a final regulation . . . the agency has no discretion in deciding to withhold or delay the regulation, and failure to comply is unlawful")). In sum, the parties' dispute centers on the distinction, if any, between agency action "unlawfully withheld" and agency action "unreasonably delayed" under the APA.

The APA provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). Although the First Circuit has applied the multi-factor TRAC test, it has done so to evaluate whether to compel agency action that is "unreasonably delayed." See In re Sierra Club, No. 12-1860, 2013 WL 1955877, at *1 (1st Cir. May 8, 2013) (evaluating whether the EPA had "unreasonably delayed" issuing discharge permits not subject to any statutory deadline); Kokajko v. FERC, 837 F.2d 524 (1st Cir. 1988) (applying TRAC to determine whether the Federal Energy Regulatory Commission's "delay in issuing a final order [was] so egregious that mandamus [was] warranted"); Towns of Wellesley, Concord and Norwood, Mass. v. FERC, 829 F.2d 275 (1st Cir. 1987) (applying TRAC to claims

that the Federal Energy Regulatory Commission "unreasonably delayed in complying" with the court's mandate to issue a final order).  Nor has the First Circuit addressed the possible differences in evaluating agency action that is in violation of a congressionally mandated deadline, as opposed to agency action that is merely delayed, even if the delay is unreasonable. Other circuits have considered this issue, but have come to different conclusions.

In Barr Labs, the D.C. Circuit considered whether to exercise the court's equitable powers to enforce a statutory deadline in the "unlawfully withheld" context.  Barr Labs, 930 F.2d at 73.  There, the court applied the TRAC factors and ultimately refused to order the agency to comply with the congressionally-imposed deadline, noting that equitable relief "does not necessarily follow a finding of a violation."  Id. at 74.  Here, the SEC urges the Court to follow the Barr Labs approach and points out that "failure to comply with a statutory deadline is just one of six factors to be considered" under TRAC, D. 24 at 16, which the SEC argues at least suggests that a congressionally mandated deadline is not determinative.  Indeed, one of the TRAC factors instructs courts to consider whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed."  TRAC, 750 F.2d at 80.  In the case of agency action "unlawfully withheld," however, Congress has arguably done more than "provide a timetable" – it has set a firm deadline.  Moreover, while that factor is perhaps broad enough to encompass consideration of a firm congressional deadline, it is not dispositive of whether a reasonableness standard is the appropriate metric to apply in the face of a clear, nondiscretionary statutory directive where Congress has already articulated how much delay is too much.  Further, the Barr Labs court did not specifically address the language of the APA, which provides that courts "shall . . . compel agency action unlawfully withheld."  5 U.S.C. § 706(1).

The SEC also urges the Court to follow the <u>Barr Labs</u> decision, arguing that the First Circuit cited the case with approval in <u>In re Sierra Club</u>, 2013 WL 1955877, at *1. <u>In re Sierra Club</u> concerned the EPA's delay in granting discharge permits not subject to any statutory deadline, however, and the First Circuit cited <u>Barr Labs</u> to support the proposition that "[p]etitioners have not shown why [] two particular permits should be moved ahead of the queue by our court." <u>Id.</u> In contrast, the present case involves a clear statutory deadline and does not involve the reordering of a first-in, first-out queue. The Court, therefore, does not read the First Circuit's reference to the <u>Barr Labs</u> decision as importing that precedent wholesale or as adopting the broader proposition that <u>TRAC</u> factors apply to mandatory statutory deadlines.

In <u>Forest Guardians</u>, the Tenth Circuit addressed § 706(1) of the APA directly and concluded that "[t]hrough § 706 Congress has stated unequivocally that courts must compel agency action unlawfully withheld or unreasonably delayed." 174 F.3d at 1187. Acknowledging that "courts should not lightly infer Congress' intent to curtail the courts' traditional equitable power to exercise discretion in the granting of injunctive relief," the Tenth Circuit nevertheless concluded that "'[s]hall' means shall" and that "when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command." <u>Id.</u> The <u>Forest Guardians</u> court then noted that while other "[c]ourts have given little attention to the distinction between agency action 'unlawfully withheld' and agency action 'unreasonably delayed,'" the distinction is significant "because the discretion Congress took away from courts by using 'shall' in the first portion of § 706(1) arguably could come back to the courts through Congress' use of the modifier 'unreasonably' as applied to actions 'delayed' (as opposed to actions 'withheld') in the second portion of § 706(1)." <u>Id.</u> at 1189. The Tenth Circuit then examined the APA's other substantive provisions, its structure and the legislative history and held:

> when an agency is required to act—either by organic statute or by the APA—
> within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the
> discretion to decide whether agency delay is unreasonable.   However, when
> Congress by organic statute sets a specific deadline for agency action, neither the
> agency nor any court has discretion.   The agency must act by the deadline.   If it
> withholds such timely action, a reviewing court must compel the action
> unlawfully withheld.

Id. at 1190.   Notably, the Tenth Circuit considered and rejected the D.C. Circuit's Barr Labs

analysis.   Id. at 1190-91.   Observing that the D.C. Circuit had not directly addressed the language

of § 706 and that "[n]either TRAC nor any of the cases it relied on to 'discern the hexagonal

contours of a standard' involved agency inaction in the face of a mandatory statutory deadline,"

the Forest Guardians court concluded "that once a court deems agency delay unreasonable, it

must compel agency action."   Id. at 1191.

The Court agrees with the Tenth Circuit's analysis in Forest Guardians and adopts it here.

Accordingly, the Court must compel the SEC to act.   "To hold otherwise would be an affront to

our tradition of legislative supremacy and constitutionally separated powers."   Forest Guardians

174 F.3d at 1190.   Although the Court acknowledges that "[a] mandatory injunction is an

extraordinary remedy, especially when directed at the United States Government," Sierra Club,

374 F. Supp. 2d at 33, so too is an agency's failure to act an extraordinary circumstance "because

it signals the 'breakdown of regulatory processes.'"   In re Am. Rivers & Idaho Rivers United,

372 F.3d 413, 418 (D.C. Cir. 2004) (citation omitted).   The SEC argues that the Forest Guardians

analysis is flawed because that court only relied on § 706 of the APA and ignored § 702, D. 24 at

17 n.10, which provides that nothing in the APA "affects other limitations on judicial review or

the power or duty of the court to dismiss any action or deny relief on any other appropriate legal

or equitable ground."   5 U.S.C. § 702.   While § 702 provides that courts retain appropriate

equitable jurisdiction, however, it does not create equitable discretion where there is none.

Therefore, the equitable discretion retained by the Court here is not the discretion not to act at all, but is the discretion to order an appropriate and reasonable remedy. See, e.g., United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 497-98 (2001) (noting that "[c]ourts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute. Their choice (unless there is statutory language to the contrary) is simply whether a particular means of enforcing the statute should be chosen over another permissible means; their choice is not whether enforcement is preferable to no enforcement at all" (internal citation omitted)).

### C.   **Remedy**

While the Court concludes that the SEC "unlawfully withheld" agency action and, therefore, the Court is required by § 706 to compel the agency to comply with its statutory duty to promulgate a final disclosure rule, an order must nevertheless consider the work that is necessary to publish the final rule and how quickly that work can be accomplished. See Forest Guardians, 174 F.3d at 1193. Oxfam seeks an order requiring the SEC to: "1) issue a proposed rule within 30 days of the issuance of summary judgment or on August 1, 2015, whichever comes first; 2) open a 45-day period for public notice and comment; and 3) promulgate a final rule implementing Section 1504 within 45 days after the end of said period, with the final rule promulgated no later than November 1, 2015." D. 18 at 19. The SEC argues that Oxfam's proposed timeline "is unrealistic and unreasonable," especially given the "various complex issues" that the SEC must address on remand. D. 24 at 18. As an alternative, the SEC requests that the Court "allow the [SEC] to report on its progress in promulgating the proposed rule no later than October 31, 2015." Id. at 20.

Based on the analysis above, the Court orders the SEC to file with the Court in 30 days an expedited schedule for promulgating the final rule. The court will make further orders as

necessary.  As such, the Court shall retain jurisdiction to monitor the schedule and "to ensure compliance" with its order.  <u>Nader v. FCC</u>, 520 F.2d 182, 207 (D.C. Cir. 1975).

**VI.**        **Conclusion**

For the foregoing reasons, the Court ALLOWS Oxfam's motion, D. 17, and DENIES the SEC's motion, D. 23.

**So Ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge